UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KUEHNE + NAGEL INC.,

                              Plaintiff,

                -v.-

BAKER HUGHES,

                              Defendant.

21 Civ. 8470 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Kuehne + Nagel Inc. ("Plaintiff" or "K+N") brings this action for declaratory and injunctive relief in a dispute arising from an agreement to transport cargo on behalf of one of its customers, Defendant Baker Hughes Company ("Defendant" or "Baker Hughes"). Defendant now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to compel arbitration pursuant to an alternative dispute resolution provision in the contract that purportedly governs the disputed transaction, and thereafter to dismiss this case. For the reasons set forth in the remainder of this Opinion, the Court grants Defendant's motion to compel arbitration and stays the instant action.

**BACKGROUND**[1]

**A.    Factual Background**

Plaintiff is a logistics service provider that arranges the transportation of freight on behalf of its customers, including Defendant. (Compl. ¶¶ 7-8). In

---

[1]    This Opinion draws its facts from the Complaint (the "Compl." (Dkt. #1)) and the exhibits attached thereto; the Declaration of Jully Torres in Support of Defendant's Motion to Compel Arbitration and to Dismiss ("Torres Decl." (Dkt. #22)), including the exhibits attached thereto; the Declaration of Grant Deen in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss ("Deen Decl." (Dkt. #28-1)); the Declaration of Stephen Savarese in Opposition to Defendant's Motion to Compel

2018, Plaintiff and the Global Shippers' Association ("GSA") entered into an agreement entitled "Global Air Freight Transportation Contract" (the "Agreement" (Dkt. #23) (filed under seal)), which, as its name suggests, governs transactions between Plaintiff and GSA member companies involving the global transportation of air freight.  By amendment dated August 25, 2020, Defendant was named a GSA member company.  (*Id.* at 33).  Section 21.A of the Agreement, entitled "Alternative Dispute Resolution" ("ADR"), provides that "[i]n the event of any dispute between the Parties hereto arising from or relating to this contract," each of the Parties will appoint a designated representative to endeavor to resolve the dispute; if that endeavor fails, the dispute will be escalated to higher-level representatives of each party; if that fails, the Parties will submit the dispute for non-binding mediation; and if mediation fails, either party may refer the dispute to arbitration.  (Agreement § 21.A).[2]

---

Arbitration and to Dismiss ("Savarese Decl." (Dkt. #28-2)); the Declaration of Fernanda Campos in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss ("Campos Decl." (Dkt. #28-3)); the Declaration of Jully Torres in Further Support of Defendant's Motion to Compel Arbitration and to Dismiss ("Torres Reply Decl." (Dkt. #30)); and the Declaration of Bud Tollefsen in Support of Defendant's Motion to Compel Arbitration and to Dismiss ("Tollefsen Reply Decl." (Dkt. #31)).

For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration and to Dismiss as "Def. Br." (Dkt. #21); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss as "Pl. Opp." (Dkt. #28); and Defendant's reply memorandum as "Def. Reply" (Dkt. #29).

[2]     Given its criticality to the parties' dispute, the Court reproduces the provision here in its entirety for convenience:

21. ALTERNATIVE DISPUTE RESOLUTION

A. In the event of any dispute between the Parties hereto arising from or relating to this Contract, then, upon the written request of either party, each of the Parties will appoint a designated representative to endeavor to resolve such dispute.  The designated representatives will be executives with sufficient authority to engage in good faith negotiations and bind the party s/he represents.  If the designated representatives are unable to

In or about September 2020, Defendant enlisted Plaintiff's services to ship certain air cargo to Brazil.  (Compl. ¶¶ 8-10).  On September 14, 2020, in connection with the movement of the air cargo now at the center of the instant dispute, Plaintiff executed House Air Waybill 1034999361 and retained the

---

resolve the dispute within a reasonable period (but in no event more than thirty (30) days from the date of receipt of written request), then the dispute will be escalated to representatives of each party at least one (1) level higher in their respective organizations than those involved in the previous round of negotiations.  Except if a court determines preliminary injunctive relief is warranted upon application of one of the Parties to this Contract, no formal proceedings relating to such dispute may be commenced until the escalated representatives conclude in good faith that amicable resolution through continued negotiation of the matter in issue does not appear likely.  If the escalated representatives are also unable to resolve the dispute within a reasonable period, (but in no event more than sixty (60) days from the date of receipt of written request), the Parties shall submit the dispute for non-binding mediation by a single mediator in accordance with the rules of the CPR Institute for Dispute Resolution (www.cpradr.org) ("CPR") or, when either of the Parties is not a U.S. entity, with the ADR rules of the International Chamber of Commerce ("ICC"), utilizing rules and procedures in place at the time of the dispute.  Such mediator shall be competent in any technical, employment law or other issue(s) involved in the dispute.  In the event the Parties are unable to resolve the dispute within thirty (30) days of commencement of the mediation, or if one party fails to participate in the mediation as agreed herein, either party may refer the dispute to arbitration by a sole arbitrator (for disputes arising for equivalent of $5 million US Dollars or less) or 3 arbitrators (for claims arising over equivalent of $5 million US Dollars) in accordance with the CPR Rules for Non-Administered Arbitration of Business Disputes then currently in effect, or, when either of the Parties is not a U.S. entity, in accordance with the arbitration rules of the ICC. Unless otherwise agreed by the Parties, the mediator shall be disqualified from serving as arbitrator in the case.  The place of arbitration shall be New York, New York, and the language of the arbitration shall be English. The arbitration shall be governed by the Federal Arbitration Act and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.  The Parties will participate in the arbitration in good faith, and will share equally in the administrative costs of the mediation and arbitration.  The arbitrator shall not be empowered to award damages in excess of compensatory damages, and each party irrevocably waives all rights to recover such non-compensatory damages with respect to any Dispute resolved by arbitration hereunder.  Forwarder irrevocably waives all objections to venue, jurisdiction of the court, and right to trial by jury in any judicial action, proceeding or claim ancillary to an arbitration before arising out of this Contract.

services of a direct air carrier, ABSA AEROLINHAS BRASILERIAS ("LATAM"), to perform the physical movement of the cargo (*id.* at ¶¶ 9-10; Ex. A ("K+N Air Waybill")); and LATAM executed Air Waybill 549-28452830 (*id.* at ¶¶ 9-10; Ex. B (the "LATAM Air Waybill")).  Both air waybills provide that the parties have "agreed that the goods described herein are accepted … for carriage subject to the conditions of contract," which conditions are detailed on the reverse page.  (K+N Air Waybill 1; LATAM Air Waybill 1).  Further, each air waybill limits Plaintiff's liability as the issuing carrier, stating that "[i]f the carriage involves an ultimate destination or stop in a country other than the country of departure, the Montreal Convention or the Warsaw Convention may be applicable to the liability of [K+N] in respect of loss of, damage or delay to cargo."  (K+N Air Waybill 2; LATAM Air Waybill 2).[3]  Subparagraph 4 of the Conditions of Contract provides, "For carriage to which the Montreal Convention does not apply, [K+N's] liability limitation for cargo lost, damaged, or delayed shall be 22 [special drawing rights ('SDRs')] per kilogram unless a greater per kilogram monetary limit is provided[.]"  (K+N Air Waybill 2; LATAM Air Waybill 2).

---

[3]      The Montreal Convention is a multilateral treaty that "applies to all international carriage of persons, baggage or cargo performed by aircraft."  Convention for the Unification of Certain Rules for International Carriage by Air, ch. I, art. 1, § 1, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000), *cited in New Fortune Inc.* v. *Apex Logistics Int'l (CN) Ltd.*, No. 21-262-cv, 2021 WL 5499464, at *1 (2d Cir. Nov. 24, 2021), *as amended* (Dec. 3, 2021).  It is the successor treaty to the Warsaw Convention, and "may be analyzed in accordance with case law arising from substantively similar provisions of its predecessor." *Cohen* v. *Am. Airlines, Inc.*, 13 F.4th 240, 245 (2d Cir. 2021).  Plaintiff's arguments concerning the applicability of the Montreal Convention to this dispute are discussed *infra.*

Plaintiff asserts that it discharged all of its statutory and contractual duties, but that through no fault of its own, LATAM failed to ensure that the required security manifest traveled with the cargo, such that Defendant's cargo was ultimately seized by customs authorities at its destination in Brazil. (Compl. ¶ 10). The seized cargo is being held by Brazilian customs but has not been lost or damaged. (*Id.*). At no time was Plaintiff authorized or requested to take any action with Brazilian customs authorities to obtain the release of said cargo. (*Id.* at ¶ 11).

On December 28, 2020, Defendant sent a demand letter to Plaintiff "to commence the claim process so that Baker Hughes [could] be promptly compensated for its losses." (Torres Decl., Ex. E). The parties subsequently exchanged letters and held multiple meetings over several months, first among lower-level executives and then among higher-level executives, in an attempt to reach a commercial agreement on Defendant's claim. (*Id.* at ¶ 12). On October 14, 2021, after each of these attempts failed, Defendant requested mediation pursuant to Section 21.A of the Agreement. (*Id.* at ¶ 13). Plaintiff agreed to mediate before a private mediator, on a confidential basis and without prejudice. (*Id.* at ¶ 14). The first mediation session took place on January 12, 2022, and mediation is still ongoing as of the date of filing. (*Id.* at ¶ 15). If mediation fails, Defendant intends to promptly commence arbitration pursuant to Section 21.A of the Agreement. (*Id.* at ¶ 16).

Plaintiff contends that the Agreement neither covers nor contemplates the type of loss now being asserted, and that Defendant is improperly seeking

to utilize the dispute resolution process thereunder. (Compl. ¶ 13). Specifically, Plaintiff argues that based on the language of the Agreement, there exists no clear intent for any arbitrator to determine arbitrability, nor for any arbitration provision to cover claims relating to air cargo where, as here, there has been no actual loss or damage to the cargo. (*Id.* at ¶ 17). Moreover, Plaintiff maintains that it has no liability as it is not responsible for the actions or inactions of LATAM. (*Id.* at ¶ 18; *see also id.* at ¶ 3). Defendant counters that the underlying dispute arises from and relates to the Agreement, and is therefore subject to the Agreement's ADR provision; that Plaintiff filed the instant action in breach of the Agreement; and that this matter should be dismissed. (Def. Br. 1).

**B.      Procedural Background**

On October 14, 2021, Plaintiff filed its Complaint against Defendant, seeking a declaratory judgment that (i) the Agreement does not apply to the instant suit and claim; (ii) no loss has been claimed (nor has such a loss occurred) within the meaning and ambit of the Montreal Convention or the Agreement; (iii) Plaintiff is not liable for LATAM's actions or inactions that are the subject matter of the underlying dispute; (iv) Plaintiff exercised all reasonable measures in the discharge of its duties and responsibilities; (v) any claims or losses relating to the cargo that is the subject of the underlying dispute would in any event be limited to 21 SDRs per kilogram; (vi) Plaintiff is entitled to an award of attorney's fees incurred in bringing and prosecuting this action; and (vii) for such other and further relief as this Court deems just and

proper. (Compl. 5). Further, Plaintiff seeks to permanently enjoin Defendant from invoking the alternative dispute resolution provisions of the Agreement with respect to the underlying dispute. (*Id.* at 7). The matter was initially assigned to then-District Judge Alison J. Nathan.

On February 4, 2022, the parties filed a joint letter motion to permit them to file the Agreement under seal, which motion the Court granted on February 10, 2022. (Dkt. #17, 19). On February 11, 2022, Defendant filed a motion to compel arbitration and to dismiss the instant suit. (Dkt. #20). On February 18, 2022, the Court issued an order staying discovery pending resolution of Defendant's motion. (Dkt. #26). Plaintiff filed its opposition brief on February 25, 2022. (Dkt. #28). On March 4, 2022, Defendant filed a reply in support of its motion. (Dkt. #29). On April 10, 2022, this matter was reassigned from Judge Nathan to this Court. (*See* Docket Entry for April 10, 2022). Accordingly, Defendant's motion is fully briefed and ripe for this Court's consideration.

## DISCUSSION

### A.    Applicable Law

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "Act"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). Section 2 of the Act provides, "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ...

7

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the Act allows a party to such an agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of an arbitration agreement. *Id.* at § 4. A court ruling on a motion to compel arbitration must decide two issues: "[i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue." *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

In resolving a motion to compel arbitration, the court applies "a standard similar to that applicable for a motion for summary judgment." *Meyer*, 868 F.3d at 74 (internal quotations omitted). "[T]he court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks, alterations, and citations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). However, the moving party need not "show initially that the agreement would be enforceable, merely that one existed." *Hines* v. *Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington* v. *Atl.*

8

*Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91-92 (2000)).

## B.   Analysis

### 1.   The Parties Have Agreed to Arbitrate

"The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." *Doctor's Assocs., Inc.* v. *Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotations and alterations omitted). This question is resolved by reference to state law. *See Meyer*, 868 F.3d at 73-74; *Bell* v. *Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract ... the ultimate question of whether the parties agreed to arbitrate is determined by state law."). Here, the question of whether the parties have agreed to arbitrate is governed by New York law. The parties do not dispute that New York law applies to this case. *See Valentini* v. *Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law."). Further, the Agreement's "Governing Law" provision provides that "[t]his Contract shall be ... governed by, the substantive laws of the State of New York," and that "[Plaintiff] agrees that it will not object to the choice of New York law or arbitration in New York in any proceeding to adjudicate a dispute under this contract or to enforce an arbitral award related to this Contract." (Agreement § 2.I).

New York law recognizes a "long-standing rule ... that an arbitration clause in a written agreement is enforceable ... when it is evident that the parties intended to be bound by the contract." *Fiveco, Inc.* v. *Haber*, 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted) (quoting *God's Battalion of Prayer Pentecostal Church, Inc.* v. *Miele Assocs., LLP*, 6 N.Y.3d 371, 373 (2006)). Under New York law, the parties' intent to be bound must be beyond question: "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Id.* (internal quotation marks omitted) (quoting *Miele Assocs.*, 6 N.Y.3d at 374). Here, the parties do not dispute the validity of the Agreement; Plaintiff merely disputes its applicability to this dispute. Therefore, the Court must determine whether the Agreement's ADR provision encompasses the instant dispute.

### 2.   The Underlying Dispute Falls within the Scope of the Arbitration Agreement

To ascertain whether a particular controversy falls within the scope of an agreement's arbitration clause, a court should first "classify the [particular] clause as either broad or narrow." *Arshad* v. *Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 447 (S.D.N.Y. 2016) (quoting *Louis Dreyfus Negoce S.A.* v. *Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). An arbitration clause is broad if, "taken as a whole, [the language] evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Id.* (quoting *Louis Dreyfus*, 252 F.3d

at 225).  If the court determines that the arbitration clause is broad, it should next discern "whether the matter is beyond the purview of that agreement."  *Id.*

The Court finds the instant ADR provision at issue to be as expansive as similar clauses that the Second Circuit has previously deemed to be broad. The Agreement's ADR provision applies to "any dispute between the Parties hereto *arising from or relating to this Contract.*"  (Agreement § 21.A (emphasis added)).  The Second Circuit has described similar language as the "paradigm of a broad clause [establishing a] presumption of arbitrability."  *Hatemi* v. *M & T Bank*, 633 F. App'x 47, 49 (2d Cir. 2016) (summary order) (describing as broad an ADR provision that applied to "any claim or controversy arising out of or relating to the agreement"); *see also JLM Indus., Inc.* v. *Stolt-Nielsen*, 387 F.3d 163, 172 (2d Cir. 2004) (defining as "broad" an ADR provision applying to "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter"); *Paramedics Electromedicina Com., Ltda.* v. *GE Med. Sys.*, 369 F.3d 645, 654 (2d Cir. 2004) ("The arbitration agreement here, covering as it does 'any controversy, claim or dispute' arising out of the Agreements, is of the broad type.").

Having concluded that the ADR provision at issue is broad, the Court must next determine "whether the matter is beyond the purview of that agreement."  *Arshad,* 183 F. Supp. 3d at 447.  The Second Circuit has made plain that "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated."  *JLM Indus.*, 387 F.3d at 172.  The Court easily finds that the allegations underlying the parties'

dispute, which involve global air freight transportation services provided by Plaintiff to Defendant, "touch matters covered by" the Agreement, which is entitled "Global Air Freight Transportation Contract." Accordingly, the underlying dispute falls within the scope of the Agreement's ADR provision.

Plaintiff vehemently disputes that the Agreement applies to the underlying dispute, raising four arguments in opposition to Defendant's motion to compel arbitration: (i) the issue of arbitrability should be decided by this Court, as the Agreement did not unambiguously delegate such matters to arbitration (Pl. Opp. 17-19); (ii)  the ADR provision is not mandatory (*id.* at 19-20); (iii) the Agreement does not apply to the transportation services at issue, as Defendant failed to take the necessary steps to request a spot quote as required by the Agreement (*id.* at 16, 20-23); and (iv) under the terms of the Agreement, Plaintiff is not responsible for LATAM's actions or inactions (*id.* at 13).  Defendant rejoins that the Agreement's ADR provision is sufficiently broad to require the submission of all disputes concerning the Agreement to arbitration, including the scope of the provision and whether the parties have satisfied the conditions precedent to arbitration; that the provision is mandatory; and that the merits of Plaintiff's other claims are matters for the arbitrator to decide.  (Def. Br. 9-11; Def. Reply 5-7).  The Court addresses each of Plaintiff's arguments in turn.

### a. The Issue of Arbitrability Must Be Decided by the Arbitrator

Pursuant to the Federal Arbitration Act, parties "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63, 68-69 (2010)). This Court agrees with Plaintiff that, absent a clear and unmistakable intention to delegate the issue of arbitrability to arbitrators, the question of arbitrability is one for the Court. (Pl. Opp. 17). *See Flexport, Inc.* v. *W. Glob. Airlines*, No. 19 Civ. 6383 (PGG), 2020 WL 7028908, at *4 (S.D.N.Y. Nov. 30, 2020) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (quoting *Bensadoun*, 316 F.3d at 175)).

"In determining whether the arbitrability of a dispute is to be resolved by the court or the arbitrator, the arbitration agreement is determinative." *DDK Hotels, LLC* v. *Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) (citing *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." (quotation marks, citation, and emphasis omitted)); *Metro. Life Ins. Co.* v. *Bucsek*, 919 F.3d 184, 189 (2d Cir. 2019) ("[W]hat is determinative for deciding whether the arbitrability of a dispute is to be

resolved by the court or by the arbitrator is the arbitration agreement.").
"[R]arely," however, "do arbitration agreements directly state whether the
arbitrator or the court will decide the issue of arbitrability." *Bucsek*, 919 F.3d
at 191.

Where, as here, the agreement is silent as to whether questions of
arbitrability are to be decided by the arbitrator, "courts must look to other
provisions of the agreements to see what contractual intention can be
discerned from them." *Bucsek*, 919 F.3d at 191. "Where the parties explicitly
incorporate procedural rules that empower an arbitrator to decide issues of
arbitrability, that incorporation may serve 'as clear and unmistakable evidence
of the parties' intent to delegate arbitrability to an arbitrator.'" *DDK Hotels
LLC*, 6 F.4th at 318 (quoting *Contec Corp.* v. *Remote Sol. Co.*, 398 F.3d 205, 208
(2d Cir. 2005) (finding incorporation of the AAA Commercial Arbitration Rules
into an arbitration agreement to be relevant evidence of the parties' intent,
because the Rules explicitly empower an arbitrator to resolve questions of
arbitrability)). While the Second Circuit has cautioned that incorporation of
procedural rules into an arbitration agreement "does not, *per se*, demonstrate
clear and unmistakable evidence of the parties' intent to delegate threshold
questions of arbitrability to the arbitrator where other aspects of the contract
create ambiguity as to the parties' intent," *id.* (citing *Bucsek*, 919 F.3d at 192-
95), it has also found that

> where the arbitration agreement is broad and expresses
> the intent to arbitrate all aspects of all disputes, this —
> coupled with incorporation of rules that expressly

> empower an arbitrator to decide issues of
> arbitrability — constitutes clear and unmistakable
> evidence of the parties' intent to delegate the question
> of arbitrability to the arbitrator.

*Id.* at 318-19; *see also Bucsek*, 919 F.3d at 191 ("Broad language expressing an

intention to arbitrate all aspects of all disputes supports the inference of an

intention to arbitrate arbitrability[.]"); *Contec*, 398 F.3d at 208 (finding that

arbitration clause in which parties agreed to submit to arbitration "any

controversy arising with respect to" the agreement, read in conjunction with

incorporation of AAA Rules, constituted clear and unmistakable evidence of

intent to arbitrate arbitrability); *Shaw Grp. Inc.* v. *Triplefine Int'l Corp.*, 322 F.3d

115, 118, 120-22 (2d Cir. 2003) (finding that arbitration agreement providing

for "all disputes" to be referred to arbitration, coupled with incorporation of

rules that delegated arbitrability to the arbitrator, constituted clear and

unmistakable evidence of intent to arbitrate arbitrability).  Moreover, "the

clearer it is from the agreement that the parties intended to arbitrate the

particular dispute presented, the more logical and likely the inference that they

intended to arbitrate the arbitrability of the dispute." *Bucsek*, 919 F.3d at 191.

Here, the Agreement's ADR provision incorporates by reference two sets

of procedural rules: the CPR Rules for Non-Administered Arbitration of

Business Disputes; or, if either of the parties is not a U.S. entity, the

arbitration rules of the ICC.  The parties disagree over which set of rules

should apply to the underlying dispute: while Plaintiff is identified in Section

1.A of the Agreement as a Swiss entity, suggesting that the ICC rules should

apply, Plaintiff claims that this is a scrivener's error and that it is actually a New York corporation with its principal place of business in New Jersey, such that the CPR rules should apply.  (*See* Def. Br. 3; Pl. Opp. 17; Def. Reply 3). The rules of the ICC unequivocally provide that claims "concerning the existence, validity, or scope of the arbitration agreement," and "any question of jurisdiction ... shall be decided directly by the arbitral tribunal," unless the Secretary General provides otherwise.  *See Olin Holdings Ltd.* v. *State of Libya*, No. 21 Civ. 4150 (JGK), 2022 WL 864507, at *5 (S.D.N.Y. Mar. 23, 2022) (citing ICC Rules of Arbitration, art. 6 § 3).  While the CPR rules do not mandate that the arbitrator *must* decide questions of arbitrability, the rules "allow arbitrators to decide all issues, including arbitrability questions, without the necessity for court intervention," though "parties *may* wish to include a specific delegation of authority to decide arbitrability in their arbitration clause."  (Commentary to 2018 CPR Non-Administered Arbitration Rules, available at https://www.cpradr.org/resource-center/rules/arbitration/non-administered/2018-cpr-non-administered-arbitration-rules (last accessed June 19, 2020)).

Given the breadth of the Agreement's ADR provision, as discussed above, the Court need not decide which set of rules applies, because both sets of rules expressly empower the arbitrator to determine issues of arbitrability.  *See DDK Hotels LLC*, 6 F.4th at 318-19 ("[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this — coupled with incorporation of rules that expressly empower an arbitrator to decide issues of

arbitrability — constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator."). Accordingly, the Court finds that the parties intended to delegate the question of arbitrability to the arbitrator.

### b. The ADR Provision Is Mandatory

Plaintiff mounts a second challenge to the ADR provision in the Agreement, arguing that the phrase "[i]n the event that Parties are unable to resolve the dispute within thirty (30) days of commencement of the mediation ... either party *may* refer the dispute to arbitration by a sole arbitrator" renders the provision permissive, as opposed to mandatory. (Pl. Opp. 19-20 (emphasis added)). As relevant to the instant dispute, Plaintiff contends that "'[m]andatory' arbitration requires arbitration if either of the parties elects to pursue it; 'permissive' arbitration requires arbitration only with the consent of both parties." *Blash* v. *BCS Placements, LLC*, No. 19 Civ. 6321 (AJN), 2020 WL 2832777, at *5 n.4 (S.D.N.Y. May 31, 2020) (internal citations omitted).

Plaintiff's argument fails for several reasons. *First*, the "overwhelming balance of authority in this [C]ircuit and elsewhere indicates that, absent some separate suggestion that an Arbitration Provision is intended to trigger permissive arbitration, provisions with the word 'may' trigger mandatory arbitration." *Blash*, 2020 WL 2832777, at *5 (quoting *Travelport Glob. Distribution Sys. B.V.* v. *Bellview Airlines Ltd.*, No. 12 Civ. 3483 (DLC), 2012 WL 3925856, at *4 (S.D.N.Y. Sept. 10, 2012)). Moreover, if Section 21.A were to be

interpreted as entirely permissive, such an interpretation would beg the question of why the parties bothered to include it at all.  "After all, parties can always submit a dispute to arbitration if both consent." *Id.*

Even where courts have concluded that arbitration clauses that provide that parties "may" submit disputes to binding arbitration are permissive, they have done so only in a limited sense. *Blash*, 2020 WL 2832777, at *5.  Indeed, courts to have found that such clauses have some permissive aspect still conclude that they require "arbitration if the provision [is] invoked by either party." *Id.* (quoting *Travelport*, 2012 WL 3925856, at *4); *see also Neisloss* v. Gomez Assocs., Inc., 16 Misc. 3d 1141(A), 2007 WL 2744909, at *2 (Sup. Ct. Nassau Cnty. Sept. 20, 2007) (finding that a "permissive" arbitration clause provided a "contractual right [for] either or both parties to seek to resolve their dispute through arbitration").  In other words, under such an interpretation, "[t]he only permissive aspect of the agreement is that which affords either party the opportunity to initiate arbitration." *Id.* (quoting *Egol* v. *Egol*, 503 N.Y.S.2d 726, 729 (1st Dep't 1986), *aff'd*, 68 N.Y.2d 893 (1986)).  Once either party initiates arbitration, both parties must arbitrate the dispute; and to conclude otherwise would render the arbitration clause meaningless. *Id.* (citing *N.Y. Cross Harbor R.R. Terminal Corp.* v. *Consol. Rail Corp.*, 72 F. Supp. 2d 70, 77 (E.D.N.Y. 1998) ("Because parties may always agree to arbitrate a dispute, to interpret an arbitration agreement that uses the term 'may' as permitting rather than mandating arbitration would violate the age-old principle that contracts must not be interpreted so as to render clauses superfluous or

meaningless.")).  Thus, even if the Court were to conclude that arbitration under Section 21.A of the Agreement is not mandatory in every instance, it is, at a minimum, mandatory in this instance, where Defendant has already initiated ADR proceedings.

### c. The Merits of Plaintiff's Claims Must Be Decided by the Arbitrator

As to Plaintiff's other claims — that no loss has been claimed (much less occurred) within the meaning and ambit of the Montreal Convention or the Agreement, that Plaintiff is not liable for LATAM's actions or inactions, that Plaintiff exercised all reasonable measures in the discharge of its duties and responsibilities, that any claims or losses relating to the cargo that is the subject of the underlying dispute would be limited to 21 SDRs per kilogram, and that Plaintiff is entitled to an award of attorney's fees incurred in bringing and prosecuting this action (*see* Compl. 5) — the Court finds that the merits of each of these claims also must be decided by the arbitrator.  A court has "no business weighing the merits of the [claims] because the agreement is to submit all [claims] to arbitration, not merely those which the court will deem meritorious." *Henry Schein*, 139 S. Ct at 529 (internal quotation marks and citation omitted); *see also Credit Suisse AG* v. *Graham*, 533 F. Supp. 3d 122, 131 (S.D.N.Y. 2021) ("Where, as here, the parties clearly and unmistakably agree that arbitrators are to determine the threshold question of arbitrability … [t]he courts must respect the parties' decision and refer the parties to

arbitration even if the claim for arbitration is wholly groundless." (internal quotation marks and citation omitted)).

### 3.    The Court Will Stay the Matter Pending Arbitration

Finally, the Court must determine whether to dismiss this action, which is Defendant's principal request, or stay it, which Defendant requests in the alternative.  When all claims have been referred to arbitration and a stay is requested, the Court must grant the stay.  *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("The plain language [of the Federal Arbitration Act] specifies that the court [shall] stay proceedings pending arbitration, provided an application is made and certain conditions are met.").  However, "the [Federal Arbitration Act's] policy favoring a stay over dismissal does not apply where a defendant primarily seeks dismissal and only requests a stay in the alternative." *Dylan 140 LLC* v. *Figueroa*, No. 19 Civ. 2897 (LAK) (DF), 2019 WL 12339639, at *6 (S.D.N.Y. Nov. 8, 2019), *aff'd*, 982 F.3d 851 (2d Cir. 2020).  Nonetheless, the Second Circuit has "counsel[ed] that courts should stay litigation pending arbitration to avoid 'convert[ing] an otherwise-unappealable interlocutory stay order into an appealable final dismissal order,' thus 'enabl[ing] parties to proceed to arbitration directly.'" *Dylan 140 LLC* v. *Figueroa*, 982 F.3d 851, 859 n.2 (2d Cir. 2020) (second and third alterations in original) (quoting *Katz*, 794 F.3d at 346).  A stay is particularly appropriate where, as here, the parties must arbitrate the question of arbitrability, since any claims that the arbitrator determines are not arbitrable would proceed before this Court.  *See Al Thani* v. *Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL

4311391, at *8 (S.D.N.Y. Sept. 21, 2021) (citing *Bonner* v. *Point72 Asset Mgmt., L.P.*, No. 18 Civ. 1233 (AT), 2018 WL 11223154, at *3 (S.D.N.Y. July 5, 2018)). Accordingly, the Court stays the action pending arbitration of the parties' claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED, and its motion to dismiss is DENIED. The Clerk of Court is directed to terminate the pending motion at docket number 20 and to stay this matter pending arbitration. The parties are hereby ORDERED to file a letter updating the Court on the status of arbitration on July 22, 2022, and every sixty (60) days thereafter, until arbitration has been completed.

SO ORDERED.

Dated:     June 23, 2022
           New York, New York

_____
           KATHERINE POLK FAILLA
           United States District Judge